**GHANDI DEETER BLACKHAM**
NEDDA GHANDI, ESQ.
Nevada Bar No. 11137
Email: nedda@ghandilaw.com
LAURA A. DEETER, ESQ.
Nevada Bar No. 10562
Email: laura@ghandilaw.com
725 South 8th Street Suite 100
Las Vegas, Nevada 89101
Telephone: (702) 878-1115
Facsimile: 1-(702) 979-2485
*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

Electronically filed: March 30, 2018

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re: | Case No.  BK-S-13-20348-MKN |
| PRIMECARE NEVADA INC. DBA NYE REGIONAL MEDICAL CENTER | Chapter 7 |
| Debtor. | Date:  May 2, 2018<br>Time:  2:30 p.m. |

AMENDED
**MOTION FOR APPROVAL OF: (I) DISPOSITION OF MEDICAL RECORDS; (II) APPROVAL OF FUNDING AGREEMENT; AND (III) ENGAGEMENT OF CONSULTANT FOR MEDICAL RECORD DISPOSITION**

Shelley D. Krohn, in her capacity as the Chapter 7 trustee ("Trustee") of the bankruptcy estate of Prime Care Nevada Inc. d/b/a Nye Regional Medical Center ("Debtor"), by and through her counsel, the law firm of Ghandi Deeter Blackham, hereby submits her *Motion for Approval of: (I) Disposition of Medical Records; (II) Approval of Funding Agreement; and (III) Employment of Consultant for Medical Record Disposition* (the "Motion").  The Motion is made and based upon the memorandum of points and authorities provided herein, the declarations of Shelley D. Krohn (the "Krohn Decl.") and Jerry Seelig (the "Seelig Decl.") filed concurrently herewith, the papers and pleadings contained in the Court's file, judicial notice of which is respectfully requested, and any argument of counsel entertained at the hearing on this Motion.

. . .

. . .

. . .

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

The Nye Regional Medical Center, a 46-bed hospital facility and clinic located in Tonopah, Nevada, was acquired by Debtor in 1999.[1] It served the residents of Tonopah, Round Mountain, Smokey Valley, Goldfield, Silver Peak, Dyer, and Lida, Nevada from 1969 through late 2015, when it ceased operating.[2] On March 21, 2016, the conversion date, the Debtor did not have any assets; however, Debtor did have possession of over ten years of patient medical records that need to either be returned to the patients or properly disposed of to ensure that patient information is protected.[3]

Appreciating the importance of allowing patients access to their medical records, as well as the importance of maintaining confidentiality and properly disposing of patients' medical records, Congress enacted Section 351 of the Bankruptcy Code to provide a more economical and expeditious means for debtors and trustees lacking financial resources to dispose of their medical records. As Debtor lacked any assets on the conversion date, the Trustee has negotiated funding from the County of Nye, Nevada ("Nye County") in concert with the State of Nevada to fund the medical record disposition in accordance with the provisions of Section 351. Thus, through the Motion, the Trustee seeks entry of an order authorizing the disposition of Debtor's medical records in accordance with Section 351, approving the funding agreement she has negotiated with Nye County, and approving the retention of a consultant with the requisite knowledge and training to assist in implementing the medical record disposition.

**II. PERTINENT FACTS**

1.	On December 13, 2013, Debtor filed its Chapter 11 petition, thereby commencing the above-captioned case. *See* ECF No. 1.

---

[1] *See* ECF No. 295.

[2] *See* ECF Nos. 295 and 961.

[3] *See* Krohn Decl. ¶¶ 3 and 4; ECF No. 1008.

2.      After Debtor was unable to consummate its confirmed plan of reorganization, its Chapter 11 case was converted to Chapter 7 and the Trustee was appointed.  *See* ECF Nos. 961, 1002, and 1004.

3.      As Debtor's schedules reflect, on the conversion date, Debtor had no assets and over $1 million in liabilities.  *See* ECF No. 1008.

4.      While Debtor does not have any assets, based on the Trustee's preliminary inspection, Debtor has the following voluminous medical records:

        a.    300 to 500 boxes of records organized by date of service and the department;

        b.   1,500 to 2,000 imaging records;

        c.   an additional 300 to 500 boxes located in a bunker at the Tonopah Airport;

        d.   3,500 active charts in the clinic; and

        e.   6,000 active charts in the hospital.

*See* Krohn Decl. ¶ 3.

5.      Not only is it important that patients desiring to obtain their medical records receive them, it is imperative that any medical records that are not claimed by the patients be disposed of in a manner that is compliant and maintains the confidentiality of the patients' records.

6.      Because the estate lacks any assets with which to accomplish the requisite medical record disposition, the Trustee and Nye County have reached an agreement ("*Agreement to Fund Trustee*") whereby Nye County will fund the costs of the medical record disposition up to the sum of $181,540.00 (the "Funding"),[4] which includes the Trustee's statutory fee based on the $181,540.00, the costs of the requisite noticing and shredding, and the fee to the consultant, Seelig + Cussigh HCO LLC ("S+C").  *See* Krohn Decl. ¶ 4; *Agreement to Fund Trustee*, attached as Exhibit 1 to the Krohn Decl.

7.      The *Agreement to Fund Trustee* provides in pertinent part as follows:

---

[4] Nye County and the State of Nevada have entered into a separate agreement, whereby the State of Nevada has agreed to reimburse Nye County for certain of the medical record disposition costs.  The Trustee is not a party to this agreement.

3

## ARTICLE 1
## SCOPE OF WORK

1.1 Services.  Trustee will complete the disposition of the Medical Records, which disposition will be completed in accordance with 11 U.S.C. § 351, including the services described in the Scope of Work attached hereto as **Exhibit B** (the "Services"). Trustee may use her own office personnel and shall be entitled to employ independent contractors on a Form 1099 basis to perform the Services, as described more fully below.

1.2 Time and Availability. Trustee shall devote the amount of time and effort as required to diligently perform the Services to completion on or before the end of the Term, as defined below, unless mutually extended in writing by the parties.

1.3 Access.  Nye County shall permit all physical and electronic Medical Records located at the Medical Center on the Effective Date to remain at the Medical Center throughout the Term to allow Trustee to carry out her duties in accordance with 11 U.S.C. § 351 and hereunder. Trustee, Trustee's staff, and/or Trustee's independent contractors shall be responsible for coordinating access to the Medical Center with Jessica Thompson at Renown Health.

## ARTICLE 2
## STATUS OF RELATIONSHIP

2.1 No Employee Status. Trustee is not an employee, partner, or co-venturer of, or in any other service relationship with, Nye County or the State of Nevada. Trustee is not authorized to speak for, represent, or obligate Nye County or the State of Nevada in any manner without prior express written authorization.

2.2 Taxes. Trustee shall be responsible for all taxes arising from compensation and other amounts paid under this Agreement, and shall be responsible for all payroll taxes and fringe benefits of Trustee's employees, if any. Neither federal, nor state, nor local income tax, nor payroll tax of any kind, shall be withheld or paid by Nye County on behalf of Trustee or her employees. Trustee understands that she is responsible to pay, according to law, her taxes.

2.3 Benefits. Trustee and Trustee's employees will not be eligible for, and shall not participate in, any employee pension, health, welfare, or other fringe employee benefit plan of Nye County or the State of Nevada. No workers' compensation insurance shall be obtained by Nye County or the State of Nevada covering Trustee or Trustee's employees.

2.4 Independent Contractors. The Trustee may engage independent contractors to assist with the performance of the Services. Any such engagements shall be on an independent contractor basis, and shall make clear in writing that such parties providing services to Trustee are not employees, partners, or co-venturers of, or in any other service relationship with, Trustee.  The independent contractors shall be responsible for payment of their own taxes, and provision of their own benefits. Any independent contractors engaged by Trustee shall have their own workers' compensation and

general liability insurance policies, which insurance shall be satisfactory to Trustee in her sole discretion.

Nye County shall have no contractual relationship with, and no responsibility for the payment of, the independent contractors, and Trustee shall indemnify and hold Nye County harmless from any demands, claims, liabilities, or losses of any kind arising from such engagements, to the extent that Nye County has complied with its payment obligations hereunder.

2.5 No Ownership. Nothing in this Agreement shall constitute or be deemed to be an assumption of liability by Nye County or an incident of Nye County's ownership with respect to the Medical Records. Nye County expressly disclaims any such interests and liabilities, and is entering into this Agreement solely as an accommodation to the Trustee, for the benefit of the State of Nevada pursuant to the Interlocal Contract.

**ARTICLE 3**
**COMPENSATION FOR SERVICES**

3.1 Trustee Compensation. As compensation for her performance of the Services, Trustee shall be paid her full statutory commission in accordance with 11 U.S.C. § 326(a) (the "Trustee Fee").

3.2 Independent Contractor Compensation. Compensation for any independent contractors engaged by Trustee shall be on a time and materials basis payable by Trustee ("Independent Contractor Compensation"). The Trustee Fee, Independent Contractor Compensation and other costs incurred in providing the Services shall not exceed $181,540.00.

3.3 Medical Record Disposition Funding. Within seven (7) business days of the Effective Date, Nye County shall tender $181,540.00 (the "Funding") to Trustee, which shall be held in Trustee's bank account established for the Estate. The Funding shall solely be utilized by Trustee to pay the Trustee Fee, the Independent Contractor Compensation, and other costs incurred by Trustee in providing the Services. Within ten (10) business days of the completion of the Services, the remaining balance of the Funding shall be returned to Nye County.

3.4 Funding Report. Trustee shall provide a report to Nye County on a monthly basis identifying the services performed and compensation and other expenses paid from the Funding during the prior 30-day period by Trustee. Trustee agrees to provide sufficient detail in the report to enable Nye County to obtain payment from the State of Nevada under the Interlocal Contract.

*See id.*

8.    As the medical records are located in Tonopah, Nevada and in light of the confidential and highly regulated nature of the records, it is necessary for the Trustee to engage a

qualified consultant to assist in effectuating the medical record disposition in accordance with Section 351.  *See* Krohn Decl. ¶ 6.

9.      Both the Trustee and Nye County sought to locate a consultant to assist the Trustee with the medical record disposition and ultimately, the Trustee chose the experienced firm of S+C. *See* Krohn Decl. ¶ 7.  As more fully set forth in Exhibit 1 to the Seelig Decl., not only does S+C have significant experience in the area of medical records disposition, but the members of the firm have in-depth personal knowledge of Debtor and its medical records, and are therefore particularly well-qualified to assist the Trustee.  *See* Seelig Decl. ¶ 4; Exhibit 1 to the Seelig Decl.

10.      As set forth in S+C's engagement letter (the "Engagement Letter"), S+C has agreed to provide the following services:

- Assisting in the preparation of the procedures and employment motion to be filed with the Bankruptcy Court obtaining approval of S+C's employment and procedures for the disposition of the medical records in accordance with 11 U.S.C. § 351.
- Obtain access to or if access not gained then get an order(s) addressing access to Prime Care's electronic medical records.
- Obtain authorization to immediately destroy any medical records where the last activity service was more than ten years ago or the time period stated for pediatric patient encounters.
- Build and then review the master patient index; employing that index create a comprehensive database of the patient's name, social security number, information, contact information and insurance information, possessed medical records, and record status.
- As per 11 U.S.C. § 351; at the start of the Project: publish notice, in 1 or more appropriate newspapers, that if patient records are not claimed by the patient or an insurance provider (if applicable law permits the insurance provider to make that claim) by the date that is 365 days after the date of that notification, the trustee will destroy the patient records.
- Send the notification to each patient, next of kin, and insurance carrier as required by 11 U.S.C. § 351.
- Track the responses and access and distribute the original patient records (whether in person or by mail) to the patient or their documented agent under a power of attorney.
- Consolidate/update patient files when necessary to include supplemental medical information that has continued to arrive in the mail after Prime Care's closure.

- Promptly after approval of the procedures motion by the Bankruptcy Court, contact by certified mail, each appropriate Federal agency to request permission from that agency to deposit the remaining patient records with that agency or they will be destroyed.
- Make arrangements for the secure, off-site destruction of all remaining records in accordance with 11 U.S.C. § 351.
- After the 365-day notice period, destroy all patient records remaining shall be destroyed unless a federal agency requests that the records be maintained, in which case, the federal agency shall bear the associated costs of maintenance and subsequent destruction.
- Take all other action necessary to meet the requirements of 11 U.S.C. § 351.

11. Importantly, to ensure that the medical record disposition is completed without exceeding the Funding, S+C has agreed that its total fees and costs will be capped at the sum of $144,290.00, thereby leaving sufficient funds to pay the Trustee's statutory fee and leaving a $25,000 reserve for legal expenses. *See* Exhibit 1 to the Seelig Decl.

### III. LEGAL ARGUMENT

**A.** **Section 351 Provides the Mechanism for the Disposition of the Medical Records.**

Section 351 provides a form of federal safe harbor from regulations requiring the retention of patient records for health care businesses subject to a proceeding under Chapters 7, 9, or 11 where the trustee is not able to meet higher state or federal standards due to a lack of funds. In particular, where a "trustee does not have a sufficient amount of funds to pay for the storage of patient records in the manner required under applicable Federal or State law," Section 351 provides the mechanism for notice and destruction of said records. 11 U.S.C. §351. Section 351 provides, in pertinent part:

**(1)** The trustee shall--

**(A)** promptly publish notice, in 1 or more appropriate newspapers, that if patient records are not claimed by the patient or an insurance provider (if applicable law permits the insurance provider to make that claim) by the date that is 365 days after the date of that notification, the trustee will destroy the patient records; and

**(B)** during the first 180 days of the 365-day period described in subparagraph (A), promptly attempt to notify directly each patient that is the subject of the patient records and appropriate insurance carrier

7

concerning the patient records by mailing to the most recent known address of that patient, or a family member or contact person for that patient, and to the appropriate insurance carrier an appropriate notice regarding the claiming or disposing of patient records.

**(2)** If, after providing the notification under paragraph (1), patient records are not claimed during the 365-day period described under that paragraph, the trustee shall mail, by certified mail, at the end of such 365-day period a written request to each appropriate Federal agency to request permission from that agency to deposit the patient records with that agency, except that no Federal agency is required to accept patient records under this paragraph.

**(3)** If, following the 365-day period described in paragraph (2) and after providing the notification under paragraph (1), patient records are not claimed by a patient or insurance provider, or request is not granted by a Federal agency to deposit such records with that agency, the trustee shall destroy those records by--

**(A)** if the records are written, shredding or burning the records; or

**(B)** if the records are magnetic, optical, or other electronic records, by otherwise destroying those records so that those records cannot be retrieved.

11 U.S.C. § 351.

As noted by legal commentators, the purpose of Section 351 is to allow the trustee standards by which she may dispose of patient records where the costs of maintaining them in accordance with otherwise applicable state and federal regulations would be economically infeasible.[5]  The American Bankruptcy Institute ("ABI") noted:

> At least with respect to debtors in bankruptcy, it appears that Congress has effectively superseded the records-retention requirements of federal law and, presumably through its constitutional powers, superseded state laws concerning mediation records retention.  Because records retention can be very expensive and §351 permits debtors to dispose of records in a fraction of the time that would be required under federal and state law, §351 can be viewed as one of the few benefits bestowed on debtors by BAPCPA.

*Id.*  "In general, although the various states' record retention laws vary widely (some requiring retention of records for as long as 25 years), at least one conclusion can be drawn: nonbankruptcy

---

[5] *See, e.g.,* "New Rules Concerning Patient Records Disposal Section 351 May Not Reduce Controversies over the Proper Procedures to Be Followed by Health Care Debtors," *ABI Journal* (Dec/Jan 2006), *available at: http://www.abi.org/abi-journal/new-rules-concerning-patient-record-disposal-section-351-may-not-reduce-controversies*.

law concerning records retention and disposal is generally much more patient-friendly and stringent than §351 of the Code." *Id.*

In *In re LLSS Management Company, Inc.,* Case No. 07-02678-5-ATS, 2008 WL 395184 (Bankr. E.D.N.C. Feb. 11, 2008), the bankruptcy court addressed whether a nicotine cessation clinic's business was subject to Section 351.  The court explained that the purpose of Section 351 is to create a more limited records retention and disposal standard where the trustee is not required to meet federal or state standards when the debtor lacks funds to do so. *Id.* at *1. In that case, however, the court noted that neither HIPAA nor state-specific statutory requirements applied to the particular medical records of the debtor facility, and thus debtor did not have to comply with Section 351. *Id.* at *2.   Although the court held that the facility was not required to follow Section 351, (which would have created a heightened and more costly retention standard, given that the clinic was not subject to federal or state requirements), the court nevertheless approved a shortened procedure for notice and destruction of records, drawing on Section 351 as a guideline. *Id.* The court noted that "Continued storage of the medical histories would provide no benefit to anyone and presents an opportunity for that personal information to be compromised." *Id.*

Further, prior to the BAPCPA creation of Section 351, courts previously rejected attempts to regulate the actions of a bankruptcy trustee regarding the maintenance of medical patient records.  In *Sarf v. New York State Dept. of Health (In re Adelphi Hospital Corp.),* 579 F.2d 726, 729 (2d Cir. 1978), the Second Circuit rejected the application of state health administration regulations to the actions of a bankruptcy trustee because, *inter alia*, prevailing federal law allowed the trustee to abandon medical records. *Id.* Further, the Second Circuit also noted that

> The paramount purpose of bankruptcy liquidation and administration is the reduction of a bankrupt's property to money as expeditiously as practicable, so as to secure funds for distribution to general creditors. Hence the trustee in examining the various assets … is from the outset faced with the managerial duty to concentrate on property of possible benefit to the estate and to <u>eliminate property that will be either valueless or unprofitable in its administration</u> … The trustee … <u>may abandon any property which is either worthless, or overburdened</u>, or for any other reason certain not to yield any benefit to the general estate.

*Id.* at 729-30 (citation omitted)(emphasis added). Thus, prior to the codification in Section 351,

9

courts have acknowledged the "fact that a trustee is empowered to Abandon worthless property," specifically in the context of medical records *Id.* at 729 n.9.

Additionally, the Bankruptcy Code does not place requirements on the manner in which a trustee may fund compliance with Section 351, and in fact contemplates multiple funding options. Section 503(b) of the Bankruptcy Code grants a trustee an administrative expense claim for the cost of disposal of records under Section 351 in winding up a health care business. 11 U.S.C. §503(b)(8(A). Additionally, Congress recognized that estate funds may not exist to cover Section 351 administrative expenses, and the legislative history related to the bill notes that, "It is anticipated that if the estate of the debtor lacks the funds to pay for the costs and expenses related to [the disposal of patient records], the trustee may recover such costs and expenses under Section 506(c)[6] of the Bankruptcy Code."  H.R. Rep. No 109-31, pt. 1, at 139 (2005).  In short, Congress appears to have recognized that the circumstances giving rise to the applicability of Section 351 could also necessitate the crafting of case-specific solutions for funding the trustee's compliance therewith.

Thus, Section 351 allows trustees of bankrupt health care businesses, who lack adequate estate funds to comply with otherwise applicable state and federal patient record retention standards, to retain and destroy patient records through a less-costly system.  Further, while the Code provides a number of non-exclusive options for funding record disposal in accordance with Section 351, it appears that Congress intentionally did not limit the manner of funding records retention specifically because Section 351 would only be triggered where estate funds were extremely limited.  As a result, Section 351 exists to provide trustees of underfunded estates with a mechanism to provide a manner of protection to patients without costly heightened compliance generally required under state and federal law.

**B.**      **The Trustee Seeks Authorization to Dispose of the Medical Records.**

Having satisfied the threshold requirements of Section 351, the Trustee is authorized by

---

[6] Section 506(c) allows a trustee to recover from property securing a secured claim the necessary costs of preserving or destroying such property.  11 U.S.C. § 506(c).

Section 351 to complete the disposition of Debtor's medical records in accordance with the provisions therein. As a hospital and medical clinic, Debtor was unquestionably a health care business, and as Debtor has no assets, Debtor unquestionably lacks the ability to pay for the storage of the voluminous patient records. However, prior to commencing the disposition of the records, the Trustee is seeking an order confirming that she is authorized to dispose of the medical records in accordance with Section 351, including that she be permitted to provide original records to patients to avoid unnecessary and costly copying costs.  Importantly, there is nothing in Section 351 that requires the Trustee to incur the significant cost of maintaining copies that will simply be destroyed at the conclusion of the 365-day period.

Additionally, the Trustee requests that she be permitted to notify the federal agencies immediately, rather than waiting until the conclusion of the 365-day period provided for in Section 351.  Notifying the federal agencies of the intention to dispose of the records at the conclusion of the 365-day period at the outset does not prejudice the patients or the federal agencies, but it could significantly reduce the expense of the medical record disposition.

**C.      The Funding Is Necessary to Effectuate the Medical Record Disposition.**

As the estate has no assets, Nye County has agreed to provide the Funding to facilitate the effectuation of the medical record disposition.  The Funding is not a loan; rather, it is being provided to protect the health and welfare of the citizens of Nye County by enabling access to their medical records and ensuring that the unclaimed medical records are properly disposed of to protect their confidentiality.

While the Funding is not an estate asset nor a loan, and may solely be utilized to effectuate the medical record disposition, Section 363(b) of the Bankruptcy Code is instructive.  Section 363(b) provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  To approve the use of estate assets outside the ordinary course of business pursuant to Section 363(b), a court must find that a "good business reason" exists for the use of assets. *See, e.g., Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.),* 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting *In re Lionel Corp.,* 722 F. 2d 1063, 1071 (2d Cir. 1983)).

The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.),* 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993)).  "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.),* 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).

Here, the estate currently has possession of thousands of medical records with no funds available to effectuate their preservation or disposition.  The Funding presents the only viable means for the Trustee to dispose of the medical records.  As such, the Trustee submits that approval of the Funding is appropriate and necessary and should be approved.  *See* Krohn Decl. ¶ 5.

**D.    Approval of the Engagement of S+C as an Independent Contractor to Assist in the Effectuation of the Medical Record Disposition Is Necessary and Appropriate.**

As the medical records are voluminous and located in Tonopah, Nevada, it is necessary for the Trustee to engage a consultant with experience in medical record disposition to assist her.  *See* Krohn Decl. ¶ 6.  Pursuant to Sections 327 and 328(a),[7] the Trustee seeks authorization to engage S+C as a consultant to assist her with the disposition of Debtor's medical records on the terms set forth in S+C's Engagement Letter, which services were set forth above.

For its services, S+C will charge its normal hourly rates ranging from $375 for Mssrs. Seelig and Cussigh, $200 for technology specialists, $42 for senior and lead clerks, and $35 for clerks, with a retainer of $30,000, all of which shall be paid from the Funding.  *See* Seelig Decl. ¶ 5.  Additionally, S+C has agreed that its fees and costs shall not exceed the maximum amount of $144,290.00 (the "S+C Cap") and should S+C's fees and expenses exceed the S+C Cap, S+C shall

---

[7] Section 328 states that a "trustee… may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, ***on any reasonable terms and conditions of employment, including on a retainer, or hourly basis,*** on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a) (emphasis added).

12

be responsible for completing the medical disposition services contemplated in the Engagement Letter at S+C's own cost. *See id.* Additionally, S+C's fees and costs shall be paid by the Trustee from the Funding monthly without further order of the Court. *See id.*

To the best of S+C's knowledge, neither S+C, nor any of its employees have any present or prior connection with Debtor, or Debtor's creditors, or other parties-in-interest, except as set forth herein and in the Seelig Declaration. Of particular note, Jerry Seelig was appointed as the patient care ombudsman for Debtor on January 13, 2014 and on May 9, 2014, Mr. Seelig was appointed as Debtor's responsible officer. *See id.* ¶ 6. After Debtor's plan was confirmed, Mr. Seelig's role with Debtor terminated. *See id.*

To the best of S+C's knowledge, S+C and its employees do not hold or represent any interest adverse to Debtor's estate, particularly in light of the limited services that S+C shall perform. *See id.* ¶ 7. Additionally, S+C has agreed to waive its administrative claim against Debtor and therefore, it and its employees are disinterested persons within the meaning of Sections 101(14) and 327 of the Bankruptcy Code, as modified by Section 1107(b). *See id.* ¶ 8. Further, and as more fully set forth in the Seelig Declaration, S+C does not have any connection with the Office of the United States Trustee or any persons employed in the Office of the United States Trustee. S+C's representation of Debtor will not be adverse to Debtor's estate. *See id.* ¶ 9.

As S+C is uniquely qualified to assist the Trustee in effectuating the necessary medical record disposition and where such services will be paid with the Funding provided by Nye County, the Trustee submits that the engagement of S+C on the terms set forth in the Engagement Letter is necessary and appropriate. *See* Krohn Decl. ¶ 8.

## IV. <u>CONCLUSION</u>

The Trustee has faced an untenable situation – an estate containing thousands of patients' medical records and no money to fund their preservation or proper disposition. The Trustee has worked diligently to find a solution to ensure that the confidentiality of the patient records is maintained, that patients are able to obtain their records, and that any remaining records are properly disposed of, as described in this Motion. As such, the Trustee respectfully requests entry of an order in the form attached hereto as **Exhibit 1**:

1.    Permitting the Trustee to dispose of the medical records in accordance with Section 351 and Bankruptcy Rule 6011;

2.    Authorizing the Trustee to provide the original medical records to the patients and to notice the federal agencies during the pendency of the 365-day period;

3.    Approving the *Agreement to Fund Trustee* and authorizing the Trustee to take all necessary actions to effectuate its terms; and

4.    Authorizing the Trustee to engage S+C pursuant to Sections 327 and 328 on the terms set forth in the S+C Engagement Letter, including monthly payments up to the S+C Cap without further approval of the Court.

DATED this 30 day of March, 2018.

Respectfully submitted:

/s/ Nedda Ghandi
**GHANDI DEETER BLACKHAM**
NEDDA GHANDI, ESQ.
Nevada Bar No. 11137
Email: nedda@ghandilaw.com
LAURA A. DEETER, ESQ.
Nevada Bar No. 10562
Email: laura@ghandilaw.com
725 South 8th Street Suite 100
Las Vegas, Nevada  89101
Telephone: (702) 878-1115
Facsimile: 1-(702) 979-2485
*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

**EXHIBIT 1**

**GHANDI DEETER BLACKHAM**
NEDDA GHANDI, ESQ.
Nevada Bar No. 11137
Email: nedda@ghandilaw.com
LAURA A. DEETER, ESQ.
Nevada Bar No. 10562
Email: laura@ghandilaw.com
725 South 8th Street Suite 100
Las Vegas, Nevada 89101
Telephone: (702) 878-1115
Facsimile: 1-(702) 979-2485
*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| In re: | Case No.  BK-S-13-20348-MKN |
| PRIMECARE NEVADA INC. DBA NYE REGIONAL MEDICAL CENTER<br>Debtor. | Chapter 7<br><br>Date: May 2, 2018<br>Time: 2:30 p.m. |

**ORDER APPROVING MOTION FOR APPROVAL OF: (I) DISPOSITION OF MEDICAL RECORDS; (II) APPROVAL OF FUNDING AGREEMENT; AND (III) ENGAGEMENT OF CONSULTANT FOR MEDICAL RECORD DISPOSITION**

Shelley D. Krohn, in her capacity as the Chapter 7 trustee ("Trustee"), filed her *Motion for Approval of: (I) Disposition of Medical Records; (II) Approval of Funding Agreement; and (III) Engagement of Consultant for Medical Record Disposition* (the "Motion")[1], which came on for

---

[1] Unless otherwise expressly stated herein, all undefined, capitalized terms shall have the meaning ascribed to them in the Motion.

hearing before the above-captioned Court on May 2, 2018, at 2:30 p.m. (the "Hearing"). All appearances were duly noted on the record at the Hearing on the Motion.

The Court stated its findings of fact and conclusions of law on the record at the hearing, which findings of fact and conclusions of law are incorporated herein by this reference in accordance with Federal Rule of Civil Procedure 52, and made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7052; and good cause appearing therefor;

IT IS HEREBY ORDERED that:

1.      The Motion is approved in its entirety.

2.      The *Agreement to Fund Trustee* by and between the Trustee and Nye County is approved in its entirety and the Trustee and Nye County are authorized to take all action necessary to effectuate its terms.

3.      Pursuant to Section 327 and 328(a), the Trustee is authorized to engage S+C as a consultant to perform the medical record disposition services set forth in the Engagement Letter on the terms set forth therein, including providing monthly payment up to the S+C Cap without further application or order of the Court.

4.      The Trustee is authorized to effectuate the disposition of Debtor's medical records in accordance with Section 351.

5.      The Trustee is authorized to contact by certified mail each Federal agency contemplated in Section 351(2) to request permission from the agency to deposit Debtor's patient records with that agency at any point during the 365-day notice period contemplated by Section 352 and shall not be required to wait 365 days to make such inquiry.

//

//

//

//

//

//

//

2

6.     The Trustee is authorized to provide patients with original copies of their medical records and shall not be required to maintain a hard or electronic copy of such records once the original is provided to the patient.

**IT IS SO ORDERED.**

Prepared and Submitted by:


/s/ Nedda Ghandi
**GHANDI DEETER BLACKHAM**
NEDDA GHANDI, ESQ.
Nevada Bar No. 11137
Email: nedda@ghandilaw.com
LAURA A. DEETER, ESQ.
Nevada Bar No. 10562
Email: laura@ghandilaw.com
725 South 8th Street Suite 100
Las Vegas, Nevada  89101
Telephone: (702) 878-1115
Facsimile: 1-(702) 979-2485
*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

3

## LR 9021 CERTIFICATION

In accordance with LR 9021, counsel submitting this document certifies that the order accurately reflects the court's ruling and that (check one):

☐    The court waived the requirement of approval under LR 9021(b)(1).

☐    No party appeared at the hearing or filed an objection to the motion.

☐    I have delivered a copy of this proposed order to all counsel who appeared at the hearing, and any unrepresented parties who appeared at the hearing, and each has approved or disapproved the order, or failed to respond, as indicated above.

☐    I certify that this is a case under Chapter 7 or 13, that I have served a copy of this order with the motion pursuant to LR 9014(g), and that no party has objection to the form or content of the order.

DATED this ___ day of May, 2018.

Respectfully submitted:

/s/ Nedda Ghandi
**GHANDI DEETER BLACKHAM**
NEDDA GHANDI, ESQ.
Nevada Bar No. 11137
Email: nedda@ghandilaw.com
725 South 8th Street Suite 100
Las Vegas, Nevada  89101
Telephone: (702) 878-1115
Facsimile: 1-(702) 979-2485
*Attorneys for Shelley D. Krohn, Chapter 7 Trustee*

###

4